SWIEKARD *v.* SWIEKARD *et al.*

*Circuit Court, N. D. Iowa, W. D.*   December 9, 1891.)

QUIETING TITLE—EVIDENCE.
   Prior to 1869, two brothers, A. and B., were speculating in Iowa lands, and A., becoming indebted to his father, who lived in Ohio, conveyed one tract to him. The father paid taxes on the land, and treated it as his own until his death in 1884, when he devised it to his daughter.  A few days after his death there was recorded a quitclaim deed from him and his wife to B., purporting to have been made in 1870; and shortly afterwards B. conveyed the land to strangers for a small fraction of its value.  The daughter sued to quiet title, alleging that the quitclaim deed was a forgery.  B. testified that before 1869 A. had repaid the debt to his father, and that shortly thereafter he had bought the land from A., who sent him the quitclaim deed by mail; also that A. thereafter disappeared, and was believed to be dead.  The deed was not produced, and the mother, and the justice before whom it purported to have been acknowledged, denied that they ever signed such a deed. B. lived in Iowa, in indigent circumstances, during all the time he claimed to have owned the land, but never occupied it, or attempted to sell or derive any revenue from it, until after his father's death.  *Held*, that the weight of the evidence was in favor of the daughter's right, and she was entitled to a decree quieting title.

In Equity.   Bill by Emma N. Swiekard against Ezra Swickard, J. F. Kimball, and George F. Champ to quiet title to lands.  Decree for complainant.

*McMillan & Kendall*, for complainant.
*B. W. Hight*, for defendants.

SHIRAS, J.   The property involved in this litigation consists of 160 acres of land, situated in Monona county, Iowa.   From the evidence it appears that Mathias Swiekard, the father of complainant, died January. 6, 1884, in the state of Ohio, where he had resided for many years. By the terms of his will, executed February 13, 1882, he devised to complainant the land in controversy.   On the 10th day of January, 1884, there was filed for record in Monona county a quitclaim deed of the land, bearing date September 2, 1870, and purporting to be signed by Mathias Swiekard and wife, the grantee therein being Ezra Swiekard,

a son of Mathias, and half-brother of complainant. On the 1st day of February, 1884, Ezra Swickard executed a deed of said premises to J. F. Kimball and George F. Champ, defendants herein, who purchased said land, and paid therefor, without notice of the claim made thereto by complainant. Complainant avers that the deed purporting to convey the land to Ezra Swickard is a forgery, and that Mathias Swickard was, at the time of his death, seised in fee of said premises, and that by the terms of his will the title thereto vested in complainant. On behalf of defendants it is claimed that in fact Mathias Swickard never was the owner in fee of said premises, although the legal title was vested in him; that this land, with other lands, was conveyed by Elias Swickard, a son of Mathias, to his father, as security for indebtedness due the father; that this indebtedness was subsequently paid in full; that Ezra Swickard bought out the interest of his brother Elias in lands owned by him in Iowa and other western states; and that the quitclaim deed of the premises in controversy was made to Ezra Swickard because he had become the owner thereof.

From this statement it will appear that the main point in dispute is as to the actual ownership of the land at the date of the death of Mathias Swickard. If he then owned the land, the same passed by the terms of his will to complainant. If he did not own it, it did not so pass. The evidence shows that up to the date of his death Mathias Swickard deemed the land to be his own property, as he paid the taxes thereon, and, as already stated, in his will he specifically devised the land to his daughter, the complainant. To overcome the case made for complainant, reliance is mainly placed upon the testimony of Ezra Swickard, the grantor of defendants Kimball and Champ. The evidence shows that Elias and Ezra, sons of Mathias Swickard, had years ago been engaged in speculating in lands in Iowa, Missouri, and Nebraska. Elias had become indebted to his father for moneys advanced, and for that and other reasons certain lands in which he was interested were conveyed to the father. It is now claimed that the indebtedness from Elias to his father was fully discharged, and that in 1869, and the years following, Ezra bought the interest of his brother Elias in all his western lands, and thus became the owner of the premises in controversy. Ezra testifies that his brother Elias has not been heard from for years, and is probably dead; that in 1869, and the years following, he bought out Elias' interest in his western lands; that Elias furnished him deeds from time to time, leaving the descriptions therein blank; that the quitclaim deed purporting to be signed by Mathias Swickard and wife of the lands in question he received by mail from Elias. There is not adduced in evidence any written evidence of the alleged sales from Elias to Ezra, nor is the testimony thereto clear and distinct. It may well be that trades were had between Ezra and Elias during the years named, but it is not made clear or probable that the land in controversy formed part thereof. The quitclaim deed under which defendants claim is not produced, it being averred that it has been lost or mislaid. Mary Ann Swickard, the widow of Mathias, and one of the alleged signers of said deed, testi-

fies that she never signed or executed the same; and James Watt, the justice before whom it purports to have been acknowledged, testifies that he never took the acknowledgment of the same. There is no evidence tending to show how or when this deed, if genuine, came into the possession of Elias, from whom Ezra claimed to have received it. Why a deed executed to Ezra should have been sent to Elias by the father is left unexplained. While it is true, as argued, that much weight cannot be given to the testimony of Mary Ann Swiekard and James Watts, owing to the lapse of time since the execution of the quitclaim deed, it being true that they might have executed and acknowledged the same, and have since forgotten the fact, yet it is equally true that their denial of the execution thereof, the failure to produce the alleged deed, and the absence of satisfactory evidence touching the delivery of said instrument, and the failure to explain why the same remained unrecorded for 14 years, certainly throws suspicion upon the validity thereof.

Under the circumstances, the court is compelled to give weight to the acts of the respective parties as indications of the real ownership of the property. On the one hand, we find that from the year 1859 up to his death in 1884, Mathias Swiekard paid the taxes on this land; and in 1882, when executing his will, he made a specific devise thereof to his daughter, the complainant herein. The acts of Mathias in regard to this land clearly show that he asserted the ownership thereof, and that he claimed and exercised the right of disposing of the same as his own property. Ezra Swiekard testifies that he is 54 years old. is a laborer by occupation, and has resided in Council Bluffs for 33 years. He claims to have become the owner of the land in 1870, yet it does not appear that he ever paid the taxes thereon, or that he ever occupied the land, or made any effort to sell the same, until after his father's death in 1884. Can it be possible that one, who was in straightened circumstances, should have allowed this land to have thus remained without making some disposition of it, either by sale or renting it, for so long a period, if he knew he was the absolute owner of it. During the father's life-time he remained wholly silent and inactive, although the claim now is that he was the absolute owner of the land, having the deed thereto in his own possession. Is it reasonable that during these many years there should not have been some demand made by the father in regard to the taxes paid by him, if the son held a deed to this land?

The theory of the defense is that the title to this land passed to Ezra Swiekard in 1870, yet from that date until in 1884 he did no act indicating any claim to ownership in the land, nor did he attempt to derive any benefit or profit therefrom by occupying or leasing the same. On the 6th day of January, 1884, the father died, and on the 10th day of the same month a quitclaim, purporting to be executed by Mathias and Mary Ann Swiekard 14 years before, was placed upon the record, and on the 1st day of February, 1884, Ezra Swiekard deeded the land to J. F. Kimball and George H. Champ. Ezra testifies that in fact he received $165, and the defendants Kimball and Champ that they paid him $335. Assuming the latter to be the sum in fact paid, it follows that Ezra

Swiekard sold the land for the sum of $1.80 per acre, the tract being a quartersection. The defendants Kimball and Champ testify that the land was worth at the time of the sale five dollars per acre. If Ezra Swiekard was in fact the owner of this land, having a deed thereto in his possession, and he had owned it since 1870, why sell it at such a sacrifice? If he was keeping it to realize the profit from its enhanced value, why sell it for one-third its value? If he was keeping it as a protection to his old age, why sell it for a mere fraction of its value? He lived in Council Bluffs, and it would have been an easy matter for him to have offered it for sale through parties living in Monona county, and thus have realized its fair value. Had this been done, however, it might have led to inquiries as to the actual ownership, growing out of the fact that Mathias Swiekard had appeared to be the owner, and had paid the taxes thereon. His acts, including the price he received, are inconsistent with the theory that he was the owner of the land, with an unquestionable title. They are consistent with the theory that he knew he was not the owner thereof, and was therefore willing to take anything he could get without subjecting his title to special scrutiny.

Leaving out of consideration the quitclaim deed relied upon by defendants, the weight of the evidence is in support of the theory that Mathias Swiekard, at the time of his death, was the owner of the land in dispute. If Ezra Swiekard had asserted his ownership of the land and was now seeking a decree to establish his title thereto, without aid from the quitclaim, it is entirely clear that he could not recover upon the evidence adduced in this case. Therefore, in the present cause, it must be held that the evidence shows that Mathias Swickard was the owner of the land, and the burden is upon the defendants of showing the execution and delivery of a valid deed by him. Reliance is placed upon the alleged quitclaim deed, said to have been executed in 1870, and withheld from the record until after the death of Mathias Swiekard in 1884. The original of this instrument is not produced in evidence, and no very satisfactory account of its whereabouts or loss is given. Ezra Swiekard testifies that the last time he saw it it was in the office of Kimball and Champ. The latter deny all knowledge of it. As already stated, the acts of Mathias Swiekard in his life-time are inconsistent with the execution and delivery of this alleged deed. Mary Ann Swiekard denies the execution thereof, as does also the justice before whom it purports to have been acknowledged. If the original deed had been introduced in evidence, it would have been a valuable aid in arriving at the truth; but it was not produced, and its absence, accidental though it may be, weighs against the defendants, in whose hands it would naturally be. It must therefore be held that the evidence fails to show with sufficient clearness the execution and delivery of the quitclaim deed relied upon by defendants, while it does reasonably show that at the date of the death of Mathias Swiekard he was the owner of the premises in dispute, and that the same passed by his will to the complainant herein, who is therefore entitled to a decree quieting the title in her as prayed for.